UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>GARY ALAN PORRETT and JENNIFER SUE PORRETT,<br><br>            Debtors. | Bankr. Case No. 09-03881-JDP |
| GARY ALAN PORRETT and JENNIFER SUE PORRETT,<br><br>            Appellants,<br><br>vs.<br><br>NOAH G. HILLEN, chapter 7 Trustee for the estate of Garry A. Porrett and Jennifer S. Porrett,<br><br>            Appellee. | District Case No. 1:16-CV-00135-MWB<br><br>**APPELLEE'S BRIEF** |

Noah G. Hillen, ISB No. 7690
CHAPTER 7 BANKRUPTCY TRUSTEE
P.O. Box 6538
Boise, Idaho 83707
Telephone: (208) 297-5774
Facsimile: (208) 297-5224
Email: ngh@hillenlaw.com
*Chapter 7 Bankruptcy Trustee*

Patrick J. Geile, ISB No. 6975
Matthew G. Bennett, ISB No. 9499
FOLEY FREEMAN, PLLC
P.O. Box 10
Meridian, ID 83680
Telephone: (208) 888-9111
Facsimile: (208) 888-5130
Email: pgeile@foleyfreeman.com
*Attorneys for Gary Alan Porrett and Jennifer Sue Porrett*

# Table of Contents

**Table of Authorities**……………………………………………………...…iii

**Statement of Jurisdiction** …………………………………………………...1

**Issue Presented**……………………………………………………….……1

**Standard of Review**......................................................................................2

**Statement of Facts**........................................................................................2

**Argument**……………………………………………………………………..6

A.       **The Bankruptcy Court correctly determined that the Payment was property of the Bankruptcy Estate.** ………………………………...6

   1. The Bankruptcy Court correctly determined the Payment was property of the estate by tracing the Payment to a cause of action against Wells Fargo arising from the 2007 loan origination for the financial harm Debtors may have suffered because of Wells Fargo's sharp lending practices……………………………………………………………......7

   2. The Bankruptcy Court correctly distinguished this case from *In re Neidorf* and other authority the Debtors rely upon……………….11

**Conclusion**…………………………………………………………………..13

# Table of Authorities

**Cases**

*Belli v. Temkin (In re Belli)*, 268 B.R. 851 (9th Cir. BAP 2001)..................................................... 1

*Cisneros v. Kim (In re Kim)*, 257 B.R. 680, 684 (9th Cir. BAP 2000) .......................................... 2

*Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001)..................................................................... 11

*In re Michael*, 423 B.R. 323, 3330 (Bankr. D. Idaho 2009) ............................................................ 8

*In re Neidorf*, 534 B.R. 369, 372 (9th Cir. BAP 2015)). ..................................................... 7, 12, 13

*See In re Goldstein*, 526 B.R. 13, 21 (9th Cir. BAP 2015)............................................................ 10

*Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986) ............ 8

*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983)..................................................... 7

**Statutes**

11 U.S.C. § 541(a)(1)................................................................................................................ 7, 11

11 U.S.C. § 541(a)(6)................................................................................................................ 7, 12

11 U.S.C. § 541(a)(7)................................................................................................................ 6, 12

11 USC § 541................................................................................................................................ 11

11 USC § 541(a)(7)......................................................................................................................... 7

28 USC § 1334................................................................................................................................ 1

28 USC § 157(b)(2)(A) .................................................................................................................. 1

28 USC § 158.................................................................................................................................. 1

Idaho Code § 48-603(11) .............................................................................................................. 10

Idaho Code § 48-608(1) ................................................................................................................ 10

Idaho Code § 5-218(4) .................................................................................................................. 10

## I.   Statement of Jurisdiction

The Bankruptcy Court had subject-matter jurisdiction below pursuant to 28 USC § 1334. The determination of whether property is property of the estate constitutes a core proceeding and was within the Bankruptcy Court's authority to decide under 28 USC § 157(b)(2)(A).  This Court has jurisdiction pursuant to 28 USC § 158.  *See also Belli v. Temkin (In re Belli)*, 268 B.R. 851 (9th Cir. BAP 2001) (District Courts have appellate jurisdiction over "final judgments, orders, and decrees" of bankruptcy judges pursuant to 28 USC. §158(a)(1)).  This is an appeal from the Bankruptcy Court's Order Regarding Joint Motion for Determination of Property of the Bankruptcy Estate (Dkt. No. 69) entered on March 17, 2016.  Appellants timely appealed by filing a Notice of Appeal (Dkt. No. 69) on March 28, 2016.

## II.   Issue Presented

Whether the Bankruptcy Court correctly determined that a settlement payment based on a consent order relating to Wells Fargo Bank's misconduct at the time it entered into a lending agreement with the Debtors was property of the estate.

**APPELLEE'S BRIEF - 1**

### III.   Standard of Review

Whether property is included in a bankruptcy estate is a question of law subject to de novo review.  *Cisneros v. Kim (In re Kim)*, 257 B.R. 680, 684 (9th Cir. BAP 2000).

### IV.   Statement of Facts

1. Gary and Jennifer Porrett obtained a home loan from Wells Fargo Bank ("Wells Fargo") on June 25, 2007.  Joint Statement of Undisputed Facts and Stipulation Regarding Admission of Exhibits (the "Stipulated Facts") at ¶ 1; Appellee Record at 22.

2. On December 9, 2009 the Debtors filed for relief under chapter 7 of the Bankruptcy Code.  Jeremy Gugino was appointed as the chapter 7 trustee.  Memorandum of Decision at 3; Appellee Record at 57.

3. On July 2, 2010, without objection from the Debtors or Gugino, the former chapter 7 trustee, Wells Fargo obtained stay relief in order to initiate a foreclosure proceeding and exercise its state law remedies as to the Debtors' home.  *Id*. at 3-4; Appellee Record at 57-58.

4. On February 17, 2011, the case closed.  *Id*. at 4; Appellee Record at 58.

**APPELLEE'S BRIEF - 2**

5. On July 20, 2011, in proceedings pending before the Board of Governors of the Federal Reserve, Wells Fargo agreed to the entry of a consent order ("the Consent Order"). Stipulated Facts, Ex. A; Appellee Record 27-52.

6. In those proceedings, the federal regulators alleged that Wells Fargo had engaged in prohibited, sharp lending practices in making loans to certain borrowers between 2006 and 2008. In particular, it was alleged that Wells Fargo had diverted otherwise qualified borrowers away from "prime" loans, into more expensive "nonprime" loans, to their financial detriment. Memorandum of Decision at 4; Appellee Record at 58; *see also* Stipulated Facts, Ex. A; Appellee Record at 30-31.

7. Wells Fargo denied that it had acted improperly, but agreed to settle the dispute through the terms of the Consent Order. Among other actions, the Consent Order required Wells Fargo to identify those borrowers who may have been injured as a result of taking out nonprime loans during the relevant time period, and to offer them what the Consent Order referred to as "restitution" or "remedial compensation." Memorandum of Decision at 4-5; Appellee Record at 58-59; *see also* Stipulated Facts, Ex. A; Appellee Record at 30-31.

8. After learning that Debtors may be entitled to a payment under the Consent Order, on April 28, 2015, the United States Trustee filed a motion to reopen Debtors' bankruptcy case and to appoint a trustee to administer Debtors'

**APPELLEE'S BRIEF - 3**

unscheduled settlement claim. Memorandum of Decision at 4; Appellee Record at 58.

9. The Bankruptcy Court granted this motion, reopening the bankruptcy case, and Trustee was appointed shortly thereafter. *Id*.

10. On July 31, 2015, the Trustee filed a Motion to Approve Compromise Under Fed. R. Bankr. P. 9019 (the "Compromise"), seeking to obtain Bankruptcy Court approval of a settlement between Wells Fargo and the bankruptcy estate. *See* Compromise; Appellee Record at 1-10.

11. Through the Compromise, Trustee sought Bankruptcy Court approval to accept Wells Fargo's offer to pay the estate $8,120.63 (the "Payment") pursuant to the Consent Order in exchange for Trustee's execution of an "Acceptance of Compensation and Release" (the "Release"), releasing Wells Fargo from any potential claims arising from its loan to Debtors. Compromise at 1-2; Appellee Record at 2-3; *see also* Compromise, Ex. A; Appellee Record at 7-8.

12. Debtors objected to the Compromise, arguing that the Payment was not property of the bankruptcy estate, and therefore, Trustee was not entitled to settle any claim against Wells Fargo. Memorandum of Decision at 6; Appellee Record at 60.

13. At a September 15, 2015 hearing, the Bankruptcy Court approved the Compromise. However, the Bankruptcy Court also allowed the

**APPELLEE'S BRIEF - 4**

parties to reserve their rights to later ask the Bankruptcy Court to determine if the Payment was property of the estate, and required Trustee to hold the Payment in trust until the Bankruptcy Court resolved this issue.  Memorandum of Decision at 6; Appellee Record at 60; *see also* Order Granting Motion to Approve Compromise Under Fed. R. Bankr. P. 9019; Appellee Record at 11-14.

14.     Debtor and Trustee disagreed as to whether the Payment constituted property of the bankruptcy estate, and on January 20, 2016, the parties filed a Joint Motion for Determination of Property of the Bankruptcy Estate (the "Joint Motion"), Appellee Record at 15-19, and the Stipulated Facts, Appellee Record at 20-53.

15.     In addition to the Stipulated Facts, the Bankruptcy Court referenced its own docked in the bankruptcy case.  Memorandum of Decision, n.3; Appellee Record at 57.

16.     The Bankruptcy Court conducted a hearing on the Joint Motion on February 23, 2016.  *Id*. at 2; Appellee Record at 56.

17.     On March 10, 2016, the Bankruptcy Court entered its Memorandum of Decision in which it held that the Payment was property of the estate.  *Id*. at 7; Appellee Record at 61.

18.     On March 17, 2016, the Bankruptcy Court entered its Order Regarding Joint Motion for Determination of Property of the Bankruptcy Estate, in

**APPELLEE'S BRIEF - 5**

which it held the Payment was property of the bankruptcy estate.  Appellee Record at 79-80.

19.   Debtors timely appealed.

## V.   Argument

**A.   The Bankruptcy Court correctly determined that the Payment was property of the Bankruptcy Estate.**

The Bankruptcy Court correctly concluded that Wells Fargo made the Payment in accordance with the Consent Order in order to compensate the Debtors for the damages they sustained due to of Wells Fargo's prepetition sharp lending practices.  Because the Debtors' claim against Wells Fargo arose in 2007, when the Debtors were the victims of the sharp lending practices, that claim was property of the estate pursuant to 11 U.S.C. 541(a)(1).  Further, since the Payment resulted from a settlement of this claim, and the Trustee was required to execute a release of potential causes of action the estate held against Wells Fargo, the Payment is also estate property pursuant to 11 U.S.C. § 541(a)(7).

Property of the bankruptcy estate is broadly construed to consist of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983).  Property of the estate also includes certain kinds of property coming into existence after the bankruptcy filing, such as "[p]roceeds, product, offspring, rents, or profits from property of the estate" and "any interest in property

**APPELLEE'S BRIEF - 6**

that the estate acquires after the commencement of the case." 11 U.S.C. §§ 541(a)(6) and (7). The Bankruptcy Court correctly noted that property acquired by an estate after commencement of a bankruptcy case "is included in the estate under § 541(a)(7) if it was created with or by property of the estate; acquired in the estate's normal course of business; or is otherwise traceable to, or arises out of, any prepetition interest included in the bankruptcy estate." Memorandum Decision at 9; Appellee Record at 63 (citing *In re Neidorf*, 534 B.R. 369, 372 (9th Cir. BAP 2015)).

> **1. The Bankruptcy Court correctly determined the Payment was property of the estate by tracing the Payment to a cause of action against Wells Fargo arising from the 2007 loan origination for the financial harm Debtors may have suffered because of Wells Fargo's sharp lending practices.**

Assets of the bankruptcy estate properly include any of the debtor's causes of action. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986). Such causes of action constitute estate property even if the debtors were unaware of the claim when they filed for bankruptcy protection. *In re Michael*, 423 B.R. 323, 3330 (Bankr. D. Idaho 2009). In this case, the Bankruptcy Court correctly concluded that the Debtors held a cause of action against Wells Fargo, which accrued prior to the bankruptcy filing, and therefore, this cause of action became property of the estate when Debtors filed their bankruptcy petition.

**APPELLEE'S BRIEF - 7**

In reaching this conclusion, the Bankruptcy Court first turned to the terms of the Consent Order.  The Consent Order noted that Wells Fargo's regulators alleged Wells Fargo "knowingly diverted borrowers away from the prime loans for which they may be qualified, and into more expensive and onerous nonprime loans, without informing them of what was occurring."  Memorandum Decision at 13; Appellee Record at 67 (citing Consent Order at 4-5; Appellee Record at 30-31).  The Consent Order specifically alleged Wells Fargo's conduct constituted "unsafe or unsound banking practices" and constituted "[v]iolations of various state laws pertaining to fraud and false or misleading statements in home mortgage loan-related documents, and to unfair or deceptive acts of practices."  Consent Order at  4-5; Appellee Record at 30-31.

The Consent Order also permitted Wells Fargo to require borrowers eligible to receive compensation from Wells Fargo to release Wells Fargo from any claims related to Wells Fargo's sharp lending practices.  *See* Consent Order at 21;Appellee Record at 47 (explaining that Wells Fargo was required to provide specimen copies of letters that specify information or documents that borrower must provide in order to obtain compensation, including an appropriate form of release); *see also* Memorandum Decision, n.11; Appellee Record at 68.  The Bankruptcy Court authorized the Trustee to execute such a Release when approving the Compromise.  Order Granting Motion to Approve Compromise

**APPELLEE'S BRIEF - 8**

Under Fed. R. Bankr. P. 9019; Appellee Record at 12. That Release stated in relevant part:

> **II. Release of liability**
>
> I understand that by accepting the compensation I have been offered, I am releasing Wells Fargo Financial, Inc. and Wells Fargo & Company (and their subsidiaries, successors and assigns) from any and all claims relating to Wells Fargo Financial's origination of a more expensive mortgage loan than the loan for which I potentially qualified.

Compromise, Ex. A; Appellee Record at 7. Based upon its reading of the terms of the Consent Order, the Bankruptcy Court was persuaded that Debtors held a cause of action against Wells Fargo "based upon the loan transaction, even if that claim was only potential or disputed." Memorandum of Decision at 15-16; Appellee Record at 69-70.

      The Bankruptcy Court next correctly determined that this cause of action accrued prior to the filing of the Debtors' bankruptcy petition, and was therefore property of the bankruptcy estate. In reaching this conclusion, the Bankruptcy Court looked to Idaho state law. *See In re Goldstein*, 526 B.R. 13, 21 (9th Cir. BAP 2015). Under state law, a cause of action for violation of the Idaho Consumer Protection Act accrued when the Debtors' loan was originated in 2007. *See* Idaho Code § 48-608(1); Idaho Code § 48-603(11) (together providing that accrual of cause of action occurs when a person purchases services and suffers an ascertainable loss that is the result of an act or practice that is otherwise misleading, false, or deceptive to the consumer).

**APPELLEE'S BRIEF - 9**

A cause of action for fraud accrues when the aggrieved party discovers the facts constituting the fraud. Idaho Code § 5-218(4). The Bankruptcy Court was careful to distinguish between accrual of a cause of action for purposes of § 541 of the Bankruptcy Code and for purposes of a statute of limitations. Memorandum of Decision at 16; Appellee Record at 70. In this Circuit, for purposes of determining whether a cause of action is estate property pursuant to § 541 of the Bankruptcy Code, the claim accrues when it could have been brought. *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001). The Bankruptcy Court noted that a cause of action for fraud under Idaho law has nine elements. Memorandum of Decision, n.13; Appellee Record at 70. The Bankruptcy Court also concluded that each of these elements, including injury, "would have occurred in this case when Debtors began paying the higher rate of interest on the loan, their cause of action for fraud would have accrued prepetition as well." Memorandum of Decision at 16; Appellee Record at 70.

In short, the Bankruptcy Court correctly concluded that Debtors held a potential cause of action against Wells Fargo arising from the 2007 loan origination for the financial harm they may have suffered because of Wells Fargo's sharp lending practices. Further, since these claims existed at the time the Debtors filed their bankruptcy petition, these claims were estate property pursuant to 11 U.S.C. § 541(a)(1). Additionally, because Trustee was required to release those

**APPELLEE'S BRIEF - 10**

claims in order to receive the Payment, the Payment is also property of the estate either pursuant to 11 U.S.C. § 541(a)(6) (as proceeds from the potential causes of action) or pursuant to 11 U.S.C. § 541(a)(7) (as a funds traceable to, and arising out of, property of the estate).

### 2. The Bankruptcy Court correctly distinguished this case from *In re Neidorf* and other authority the Debtors rely upon.

Debtors primarily rely on *In re Neidorf* in arguing that the Payment is not property of the bankruptcy estate. The Bankruptcy Court, however, correctly analyzed and distinguished *Neidorf* from the instant case. In *Neidorf*, a lender obtained relief from the automatic stay regarding a debtor's home in a chapter 7 bankruptcy. 534 B.R. at 371. After obtaining stay relief, the lender foreclosed its lien under state law. *Id*. Nearly six years after the foreclosure, the debtor received a payment pursuant to a national settlement between banking regulators and certain financial institutions, including the lender, regarding alleged improper foreclosure practices. *Id*. The chapter 7 trustee filed a motion requesting this payment be turned over to the estate arguing it was estate property pursuant to § 541(a)(7) of the Bankruptcy Code. *Id*.

The Bankruptcy Appellate Panel rejected the trustee's argument, and reasoned as follows:

> Here, Trustee has not shown how the bankruptcy estate acquired an interest in the postpetition Foreclosure Payment. ***The payment was neither created with or by***

**APPELLEE'S BRIEF - 11**

> ***property of the estate nor can it be said that the payment is traceable to or arose out of any prepetition interest included in the bankruptcy estate.*** The fact that Debtor's Residence became property of the estate, in and of itself, does not support the inclusion of the Foreclosure Payment as after-acquired property under § 541(a)(7). Rather, Debtor became entitled to the payment only as a result of qualifying events occurring after her bankruptcy filing.

*Neidorf*, 534 B.R. at 372 (emphasis added).

This case is distinguishable from *Neidorf* because the Payment is traceable to and arose from a potential prepetition claim against Wells Fargo regarding the lender's sharp lending practices.  The estate's right to the Payment under the Consent Order is conditioned upon the estate executing the Release as to the potential prepetition claims.  Thus, the Consent Order itself is not the genesis of the estate's right to the Payment.  Instead, Wells Fargo's sharp prepetition lending practices formed the basis of the Debtors potential cause of action against Wells Fargo.  The Bankruptcy Court held that that the Release sufficiently rooted the Payment as to render the Payment property of the bankruptcy estate.  In other words, even if there was no Consent Order, Trustee could have pursued claims against Wells Fargo for violation of state law.  These claims, and the Payment resulting from the compromise of these claims, constitute estate property.

**APPELLEE'S BRIEF - 12**

## VI.     CONCLUSION

Based upon the forgoing, Trustee respectfully requests that this Court affirm the decision of the Bankruptcy Court holding that the Payment was property of the Bankruptcy Estate.

Date:  July 12, 2016

/s/ Noah G. Hillen<br>Chapter 7 Bankruptcy Trustee

**APPELLEE'S BRIEF - 13**

## CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that on July 12, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Patrick John Geile**
pgeile@foleyfreeman.com,rboyle@foleyfreeman.com

            /s/ _____
            Noah G. Hillen

**APPELLEE'S BRIEF - 14**