**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| In re: | |
| GARY ALAN PORRETT and JENNIFER SUE PORRETT, | Bankr. Case No. 09-03881-JDP |
| Debtors. | |
| GARY ALAN PORRETT and JENNIFER SUE PORRETT, | |
| Appellants, | District Case No. 1:16-CV-00135-MWB |
| vs. | |
| NOAH G. HILLEN, U.S. Trustee, | **OPINION** |
| Appellee. | |

_____

**TABLE OF CONTENTS**

I.    INTRODUCTION...................................................................3
      A.   Factual Background ....................................................3
           1.   Stipulated facts.................................................3
           2.   Additional stipulated evidence ...........................4
           3.   Additional evidence ..........................................5
      B.   Procedural Background .............................................7

II.   ARGUMENTS OF THE PARTIES.......................................8

III.  LEGAL ANALYSIS ..........................................................11
      A.   Standard Of Review ................................................11
      B.   An Overview Of Property Under § 541(a).................12
           1.   Property under § 541(a)(1) ...............................13
           2.   "Proceeds" under § 541(a)(6) ..........................15
           3.   "After-acquired property" under § 541(a)(7) ......16
           4.   Summary........................................................18
      C.   Is The Payment Property Of The Bankruptcy Estate?.....18
           1.   Was there an accrued pre-petition cause of action?...............19

        2.     *Was the payment "proceeds" of the pre-petition cause of action?* ........................................................... 22

        3.     *Was the payment "after-acquired property" of the bankruptcy estate?* ..................................................... 23

        4.     *Summary* ................................................................ 24

   D.     **The Debtors' Contrary Authority** ............................................. 24

        1.     **In re Neidorf** .......................................................... 24

        2.     **In re Vanwart** ......................................................... 27

        3.     *The cases involving relief by governmental action* ................. 29

IV.   **CONCLUSION** ............................................................ 31

In a Chapter 7 case, the bankruptcy court held that a payment of $8,120.23 received by the Trustee from Wells Fargo Bank, in accordance with a post-bankruptcy Consent Order issued by regulators arising from an investigation of Wells Fargo's pre-bankruptcy mortgage lending practices, is property of the bankruptcy estate, not the debtors.  *See In re Porrett*, 547 B.R. 362 (Bankr. D. Idaho 2016).  The debtors have appealed.

## I.      INTRODUCTION

### A.      Factual Background

#### 1.      Stipulated facts

The parties agreed to disposition by the bankruptcy court of the question of whether the payment at issue is property of the bankruptcy estate or the debtors on a stipulated record.  The stipulated facts are as follows:[1]

The debtors, Gary Alan Porrett and Jennifer Sue Porrett, obtained a home loan from Wells Fargo on June 25, 2007.  On December 9, 2009, the debtors filed for relief under Chapter 7 of the Bankruptcy Code.  Jeremy Gugino was appointed as the Chapter 7 trustee.  On July 2, 2010, Wells Fargo obtained relief from the bankruptcy stay in order to pursue its state law remedies as to the debtors' home.[2]  Trustee Gugino previously distributed $2,546.65.  On February 17, 2011, the bankruptcy case closed.

In an investigation, the Board of Governors of the Federal Reserve System discovered that, during the period when the debtors obtained their home loan,[3] Wells

---

[1] In restating the Stipulated Facts, I have deleted the parties' paragraph numbers, rearranged the order of the factual statements, made editorial changes, and corrected typographical errors, but I have not changed the substance of any factual statement.  *See* Appellants' Appendix, Exhibit G (Joint Statement of Undisputed Facts and Stipulation Regarding Admission of Exhibits (Bankr. docket no. 60)).  I have also made some additions, based on the record, for the sake of clarity.

[2] As the bankruptcy court observed, in the Memorandum Decision underlying the Order from which the debtors appeal, it is unclear in the record whether Wells Fargo actually foreclosed on the home.  *See* Appellants' Appendix, Exhibit C (Memorandum of Decision (Bankr, docket no. 68), 4 n.4.

[3] This statement is drawn from page 2 of what the parties and the bankruptcy court identified as the Consent Order, that is, the Order to Cease And Desist And Order Of Assessment of a Civil Money Penalty Issued Upon Consent, entered before the Board of Governors of the Federal Reserve System.  *See* Appellants' Appendix, Exhibit G (Joint

Fargo improperly funneled certain borrowers' home loans into sub-prime loans, which included a higher interest rate than those borrowers qualified for.  This conduct by Wells Fargo resulted in certain classes of borrowers paying more in interest over the life of their loans to Wells Fargo than they otherwise should have (the difference between the non-prime and prime loan interest rates).  On July 20, 2011, Wells Fargo reached an agreement with the Federal Reserve Board regarding borrowers who received more expensive non-prime loans, which may have had higher interest rates than traditional prime rate loans, between January 1, 2006, and September 30, 2008.  The debtors are included in the class of borrowers addressed in an agreement, *i.e.*, the July 20, 2011, Consent Order, between Wells Fargo and the Board of Governors of the Federal Reserve System resolving the regulatory action and providing that Wells Fargo would pay a penalty and take certain remedial actions as to affected borrowers.[4]

On April 28, 2015, the bankruptcy case was reopened, and a new Trustee was appointed shortly thereafter.  On July 31, 2015, the Trustee filed a Motion to Approve Compromise Under Fed. R. Bankr. P. 9019 (the Compromise Motion), seeking to obtain a $8,120.63 gross settlement.   On September 18, 2015, the Court approved the Compromise, and the bankruptcy estate is in possession of $8,120.63 paid by Wells Fargo pursuant to the Compromise.

### 2.      *Additional stipulated evidence*

The parties also stipulated to the admission of the Consent Order between the Board of Governors and Wells Fargo into the record before the bankruptcy court, for purposes of their Joint Motion for Determination of Property of the Bankruptcy Estate

---

Statement of Undisputed Facts and Stipulation Regarding Admission of Exhibits (Bankr. docket no. 60), Attachment A).

[4] I have added this summary of the main provisions of the Consent Order to the parties' stipulation.

4

(Bankr. docket no. 59).   Therefore, I can properly refer to pertinent provisions of the Consent Order.

For the moment, suffice it to say that the Consent Order required payment of a penalty and certain remedial actions by Wells Fargo, but it also explicitly stated that it was not an admission of liability by Wells Fargo.  Specifically, the Consent Order stated that it did not "constitut[e] an admission by Wells Fargo, Financial or any other Wells Fargo subsidiary of any allegation made or implied by the Board of Governors in connection with this matter," and that it was "solely for the purpose of settling this matter without a formal proceeding being filed and without the necessity for protracted or extended hearings or testimony."  Consent Order at 6-7.  As mentioned briefly, above, the Consent Order included provisions for remedial compensation to the group of borrowers addressed in the Consent Order, which includes the debtors.  *Id*. at 10-23. The Consent Order also authorized Wells Fargo to obtain "an appropriate form of release not to be executed earlier than notification of the borrower of the amount of remedial compensation offered" as a document that a borrower "must provide in order to obtain such remedial compensation."  *Id*. at 21.

### 3.    *Additional evidence*

The bankruptcy court stated in the Memorandum Of Decision underlying the Order from which the debtors appeal that, "[i]n addition to the Joint Statement of Undisputed Facts and Stipulation Regarding Admission of Exhibits, Dkt. No. 60, the Court has referenced its own docket in this bankruptcy case."  Memorandum of Decision (Bankr. docket no. 68), 3 n.3.  On appeal, the Trustee filed a Motion To Augment Record On Appeal (docket no. 5) seeking to include in the record two items from the docket in the bankruptcy case:  (1) the Trustee's Motion to Approve Compromise Under Fed. R. Bank. P. 9019 (the Compromise Motion) (Bankr. docket no. 50); and (2) the Order Granting

Motion To Approve Compromise Under Fed. R. Bankr. P. 9019 (the Compromise Order) (Bankr. docket no. 56).

The Trustee pointed out that, in the bankruptcy court's Memorandum of Decision, the bankruptcy court specifically cited both of the documents the Trustee asked to add to the record. The debtors filed an Objection To Trustee's Motion To Augment Record On Appeal (Bankr. docket no. 7), arguing that the Joint Motion For Determination Of Property Of The Bankruptcy Estate (Bankr. docket no. 59) was based on stipulated facts, which did not include the documents that the Trustee was attempting to add to the record on appeal. On May 17, 2016, I granted the Trustee's Motion, but stated that I could determine whether or not it is appropriate to consider the documents in question after consideration of the full record and the parties' briefs on appeal. *See* Order (docket no. 8).

In their opening brief on appeal, the debtors argue, in pertinent part, that the release document, which was an attachment to the Trustee's Compromise Motion, was never offered or admitted into evidence in the bankruptcy court. As a practical matter, however, I find that the *fact* that Wells Fargo was authorized to obtain "an appropriate form of release" as a document that a borrower "must provide in order to obtain . . . remedial compensation" pursuant to the Consent Order, *see* Consent Order at 21, was properly before the bankruptcy court, because the parties had stipulated to the admission of the Consent Order itself in their Joint Statement Of Undisputed Facts And Stipulation Regarding Admission Of Exhibits (Bankr. docket no. 60). The debtors do not contend that the form of the release actually signed by the Trustee to obtain the remedial compensation from Wells Fargo was somehow "inappropriate." Furthermore, the Trustee quoted the actual release in his Memorandum Regarding Joint Motion For Determination Of The Bankruptcy Estate (Bankr. docket no. 64), and, in their Response To Trustee's Memorandum Regarding Joint Motion For Determination

6

Of Property Of The Bankruptcy Estate (Bankr. docket no. 65), the debtors did not argue that the release was inadmissible or outside the record that the bankruptcy court could consider.  Rather, the debtors argued that the release was *irrelevant* to the question of the ownership of the payment pursuant to the Consent Order, because, in their view, the Consent Order alone created the right to the payment.  Under the circumstances, I believe that the bankruptcy court could properly consider the language of the actual release, and that I can do the same.

> That release, identified as a "release of liability," stated as follows:

>> I understand that by accepting compensation I have been offered, I am releasing Wells Fargo Financial, Inc. and Wells Fargo & Company (and their subsidiaries, successors and assigns) from any and all claims relating to Wells Fargo Financial's origination of a more expensive mortgage loan than the loan for which I potentially qualified.

Appellants' Appendix, Exhibit E (Trustee's Memorandum Regarding Joint Motion For Determination Of Property Of The Bankruptcy Estate (Bankr. docket no. 64)), 3; Appellant's Excerpts From Record, 8.

### B.      *Procedural Background*

In a March 10, 2016, Memorandum Of Decision (Bankr. docket no. 68), the bankruptcy court concluded that the payment from Wells Fargo is property of the bankruptcy estate, although the bankruptcy court admitted that the applicable case law required a "close reading."  The bankruptcy court found that the payment pursuant to the Consent Order was compensation for Wells Fargo's pre-petition misconduct, so that it related to a pre-petition claim that was property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1), and that, because the Trustee was required to release potential claims against Wells Fargo for pre-petition misconduct to receive the payment, the payment was

property of the bankruptcy estate pursuant to either 11 U.S.C. § 541(a)(6) or 11 U.S.C. § 541(a)(7).  On March 17, 2016, the bankruptcy court entered an Order (Bankr. docket no. 69) formally disposing of the Joint Motion and holding that the payment at issue is property of the bankruptcy estate.

On March 28, 2016, the debtors filed their Notice Of Appeal And Statement Of Election (Bankr. docket no. 70), appealing the Order.  On March 28, 2016, the Trustee filed his Statement Of Election To Proceed In District Court (Bankr. docket no. 72), and on March 29, 2016, the parties were notified that the appeal was referred to the district court.  *See* (Bankr. docket no. 73).  On April 25, 2016, the bankruptcy court granted the debtors' Motion To Stay Pending Appeal (Bankr. docket no. 76).  *See* Order (Bankr. docket no. 82).

On April 27, 2016, the appeal was reassigned to me, as a visiting judge, for all further proceedings.  Docket no. 2.  On May 5, 2016, I entered a Briefing Scheduling Order (docket no. 6).  The debtors filed their Brief (docket no. 9) on June 15, 2016.  The Trustee filed his Brief (docket no. 11) on July 12, 2016, and the debtors filed a Response To Appellee's Brief (docket no. 13) on July 28, 2016.  After examination of the briefs and record on appeal, I have determined that oral arguments are not needed.  Therefore, I will resolve this appeal based on the written submissions, without oral arguments.

I now enter this Opinion on the debtors' appeal.

## II.    ARGUMENTS OF THE PARTIES

On appeal, the debtors argue that the bankruptcy court's conclusion that the payment pursuant to the Consent Order was property of the bankruptcy estate is contrary to the holding of the Bankruptcy Appellate Panel of the Ninth Circuit in *In re Neidorf*, 534 B.R. 369 (B.A.P. 9th Cir. 2015).  The debtors read *In re Neidorf* to hold that a monetary award pursuant to a Consent Order entered into after a bankruptcy petition is

8

filed is not part of the bankruptcy estate, because the "qualifying event"—the one that created the rights and remedies for the specified class of borrowers—was the Consent Order, not the liability for some misdeed that may have occurred prior to bankruptcy. They also cite *In re Vanwart*, 497 B.R. 207 (Bankr. E.D.N.C. 2013), as holding that funds pursuant to a post-petition Consent Order relating to a pre-petition foreclosure were not part of the bankruptcy estate, because those funds were not sufficiently rooted in a pre-petition event, even though the debtors qualified for the funds because of a pre-petition foreclosure action.[5]

Somewhat more specifically, the debtors argue that, here, a government agency struck a deal with Wells Fargo leading to the Consent Order that created responsibilities for Wells Fargo. They argue that, where the government stepped in, post-petition, to provide relief to a class of citizens to which the debtors belong, and no affirmative action by the debtors was required to be members of the class described in a consent order, the consent order creates the property, which belongs to the debtors. Furthermore, they argue that the release the Trustee signed is only in existence because of the Consent Order. Indeed, they argue that "there is no evidence the funds would not be received if the release was not signed." Appellants' Brief at 7, ¶ 34. They also argue that there is no evidence that there was any fraud by Wells Fargo in directing them to their mortgage loan, and no evidence of any wrongdoing that would require a release, nor is there direct evidence of any damage that they suffered as a result of conduct by Wells Fargo. They argue, further, that the Consent Order makes clear that Wells Fargo is not admitting any

---

[5] The debtors also cite *In re Vote*, 276 F.3d 1024 (8th Cir. 2002); *In re Schmitz*, 270 F.3d 1254 (9th Cir. 2001); *Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234 (11th Cir. 2008); and *Hoseman v. Weinschneider*, 277 B.R. 894 (N.D. Ill. 2002), as supporting their contention that, where post-petition action creates rights to payment or property, resulting property is not property of the estate.

wrongdoing.  Consequently, they argue that the only certainty is that they were members of a class described in, and entitled to relief under and because of, the Consent Order. In short, they argue, without the post-petition Consent Order, the funds at issue would not exist, so those funds obtained post-petition are not property of the bankruptcy estate.

The Trustee responds that the bankruptcy court correctly concluded that Wells Fargo made the payment at issue in accordance with the Consent Order in order to compensate the debtors for the damages that they sustained because of Wells Fargo's pre-petition sharp lending practices.  The Trustee argues that, because any cause of action that the debtors may have against Wells Fargo for those sharp lending practices arose pre-petition, in 2007, the debtors' causes of action are property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).  Furthermore, the Trustee argues, since the payment resulted from settlement of those causes of action, and the Trustee was required to execute a release of potential causes of action against Wells Fargo to obtain the payment, the payment is also bankruptcy estate property pursuant to 11 U.S.C. § 541(a)(7).

The Trustee explains that property of the bankruptcy estate includes any of the debtors' causes of action, even if the debtors were unaware that they had the causes of action when they filed bankruptcy, and that the debtors, here, had such a cause of action for pre-petition misconduct by Wells Fargo.  Specifically, the Trustee argues, the bankruptcy court correctly concluded that the Consent Order explains that it addresses misconduct by Wells Fargo at the time that the debtors obtained their mortgage loan from Wells Fargo, that the Consent Order also permitted Wells Fargo to require a release of any claims in order to receive compensation pursuant to the Consent Order, and that the bankruptcy court authorized the Trustee to execute such a release when the court approved the Compromise.  Next, the Trustee contends that the bankruptcy court correctly concluded that causes of action pursuant to Idaho law accrued when the debtors' loan was originated in 2007.  Thus, the Trustee argues, the bankruptcy court correctly

10

concluded that the accrued causes of action were property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1), and that a post-petition payment upon release of the causes of action was either "proceeds" of bankruptcy estate property, pursuant to 11 U.S.C. § 541(a)(6), or traceable to and arising out of property of the bankruptcy estate, pursuant to 11 U.S.C. § 541(a)(7).

The Trustee distinguishes *In re Neidorf* on the ground that the conduct at issue in the consent order in that case and the consent order itself were both post-petition, and the trustee in that case failed to show how the bankruptcy estate acquired an interest in the post-petition payment.  Here, the Trustee argues, he has made such a showing, because the release establishes that the payment pursuant to the Consent Order is traceable to, arose from, and is rooted in a potential pre-petition claim.

In reply, the debtors reiterate that the court in *In re Neidorf* referred to the consent order as the act giving rise to the property right, rather than any cause of action which may have accrued beforehand.  They also reiterate that, here, there has been no proof of pre-petition damage that could make the payment pursuant to the post-petition Consent Order the property of the bankruptcy estate.  Indeed, the debtors argue, if a fraud case was commenced on their behalf, but did not result in a verdict or judgment in their favor, nothing in the Consent Order would prevent them from receiving compensation pursuant to the Consent Order.  Thus, they argue that there is simply too tenuous a connection, if one at all, between the funds received pursuant to the Consent Order and estate property to make the funds also property of the bankruptcy estate.

### III.   *LEGAL ANALYSIS*
### A.   *Standard Of Review*

Whether property or an interest in property is property of the bankruptcy estate under 11 U.S.C. § 541 is a question of statutory interpretation reviewed de novo.  *Sierra*

*Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986); *accord In re Harrell*, 73 F.3d 218, 219 (9th Cir. 1996) (stating that the bankruptcy court's interpretation of the Bankruptcy Code, specifically, 11 U.S.C. § 541 in that case, was reviewed de novo); *In re Goldstein*, 526 B.R. 13, 21 (B.A.P. 9th Cir. 2015) ("Whether property is property of the estate is a question of law reviewed de novo.").

### B.     *An Overview Of Property Under § 541(a)*

As the Ninth Circuit Court of Appeals has explained, "The filing of a Chapter 7 bankruptcy petition automatically creates an estate" pursuant to 11 U.S.C. § 541(a).  *In re Mwangi*, 764 F.3d 1168, 1173 (9th Cir. 2014).  Property of the bankruptcy estate "includes nine non-exclusive subcategories of property," stated in subsections (a)(1)-(a)(9) of § 541.  *In re Blixseth*, 684 F.3d 865, 871 (9th Cir. 2012).  The party seeking to include property in the bankruptcy estate bears the burden of showing that the property in question is property of the bankruptcy estate.  *In re Neidorf*, 534 B.R. 369, 372 (B.A.P. 9th Cir. 2015).

The three subcategories of property under § 541(a) at issue here are the following:

> (a)  . . .   Such estate is comprised of all the following property, wherever located and by whomever held:
>
>> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>>
>> * * *
>>
>> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires
after the commencement of the case.

11 U.S.C. § 541(a)(1), (6), and (7).   These subcategories of property require some further explication.

### 1.       Property under § 541(a)(1)

Subsection 541(a)(1) specifically defines property of the bankruptcy estate as "legal or equitable interests of the debtor in property *as of* the commencement of the case."  11 U.S.C. § 541(a)(1) (emphasis added).  Section 541(a)(1)'s reference to "as of the commencement of the case" "sets a 'date of cleavage' and establishes the moment at which the parties' respective rights in property must be determined."  *See In re IndyMac Bancorp, Inc.*, Bankruptcy No. 2:08–bk–21752–BB, 2012 WL 1037481, *12 (Bankr. C.D. Cal. March 26, 2012) (quoting *In re Peterson*, 106 B.R. 229, 230 (Bankr. D. Mont. 1989), in turn quoting 4 COLLIER ON BANKRUPTCY, § 541.04, p. 541–22 (15th Ed. 1989)).  Indeed, "[t]his is a longstanding and fundamental rule of bankruptcy law."  *Id.* (citing *Everett v. Judson*, 228 U.S. 474, 479 (1913)).

It is clear that a debtor's causes of action or legal claims are "legal or equitable interests of the debtor in property," within the meaning of § 541(a)(1).  *McGuire v. United States*, 550 F.3d 903, 914 (9th Cir. 2008) ("A chose in action is property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1)." (citing *City & County of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1126 (9th Cir. 2006)); *Smith v. Arthur Andersen, L.L.P.*, 421 F.3d 989, 1002 (9th Cir. 2005) ("The 'property of the estate' includes "all legal or equitable interests of the debtor in property as of the commencement of the case," [11 U.S.C.] § 541(a)(1), including the debtor's 'causes of action.'" (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983)); *Turner v. Cook*, 362 F.3d 1219, 1225-26 (9th Cir. 2004) (stating that property of the bankruptcy estate includes all "legal or equitable interests," including a debtor's causes of actions (quoting

11 U.S.C. § 541(a)(1))); *In re Goldstein*, 526 B.R. 13, 21 (B.A.P. 9th Cir. 2015). Such causes of action "includ[e] causes of action sounding in tort, such as personal injury, for which the ultimate amount of recovery is uncertain." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1148 n.1 (9th Cir. 2009).

Bankruptcy and appellate courts in and out of the Ninth Circuit agree that property of the bankruptcy estate includes *accrued* causes of action, even if the debtors were unaware of the claims at the time they filed their bankruptcy petition. *See, e.g., In re Michael*, 423 B.R. 323, 330 (Bankr. D. Idaho 2009) (""If the cause of action accrued prior to a debtor's petition date, it is an asset that must be scheduled. . . . Moreover, the accrued cause of action is property of the estate even if the debtors were unaware of the claim when they filed for bankruptcy protection.'" (quoting *In re Hettick*, 413 B.R. 733, 752 (Bankr. D. Mont. 2009)); *In re Brown*, 363 B.R. 591, 605 (Bankr. D. Mont. 2007) ("Moreover, [an] accrued cause of action is property of the estate even if the debtors were unaware of the claim when they filed for bankruptcy protection."); *accord Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 462 (6th Cir. 2013) ("[A]ll causes of action that hypothetically could have been brought pre-petition are property of the estate. This is the case 'even if the debtor[ ] w[as] unaware of the claim.'" (internal citations omitted; quoting *In re Michael*, 423 B.R. at 330)); *Guay v. Burack*, 677 F.3d 10, 17 (1st Cir. 2012) (explaining that a debtor must disclose all potential claims in a bankruptcy petition, because such potential claims become property of the bankruptcy estate); *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (8th Cir. 2012) (explaining that pending and unliquidated claims, and even potential causes of action, must be disclosed and become property of the bankruptcy estate); *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (holding that, where the debtor filed bankruptcy after the events giving rise to her discrimination claims had occurred, the claims were property of the bankruptcy estate).

More specifically, "[a] cause of action need not be formally filed prior to the commencement of a bankruptcy case to become property of the estate." *Clift v. BNSF Ry. Co.*, No. 2:14–CV–00152–LRS, 2015 WL 4656151, *1 (E.D. Wash. Aug. 5, 2015) (citing *Cusano v. Klein*, 264 F.3d 936 (9th Cir. 2001)).  Also, "[n]othing in § 541 limits property of the estate to property scheduled by a debtor." *In re Blixseth*, 684 F.3d at 871; *Wickenkamp v. Hostetter Law Group, L.L.P.*, 2:15–CV–296–PK, 2015 WL 9948219, *13 (D. Or. Dec. 3, 2015) ("An accrued cause of action becomes an asset of the bankruptcy estate, even if it is not scheduled as such." (citing 11 U.S.C. § 541(a), and *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001)).  Thus, it is not determinative that the debtors, here, did not know of any potential claim against Wells Fargo, did not file any such claims or a lawsuit against Wells Fargo, and did not schedule any claims against Wells Fargo as property of the bankruptcy estate at or prior to the time they filed for bankruptcy.

### 2.    *"Proceeds" under § 541(a)(6)*

Unlike § 541(a)(1), which is specifically limited to interests "*as of* the commencement of the [bankruptcy] case," § 541(a)(6) pertains to "[p]roceeds . . . of or from property of the estate . . . *after* the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1) and (6) (emphasis added).  Thus, in light of the plain language of this provision, there must be some "property" of the bankruptcy estate within the meaning of § 541(a)(1) for § 541(a)(6) to bring "proceeds" "of or from that property" into the bankruptcy estate.  "The term 'proceeds' in [§ 541(a)](6) is not defined, but the intent of such provision is to be broadly construed even beyond the definition of proceeds in the Uniform Commercial Code." *In re Granite Lumber Co.*, 63 B.R. 466, 471-72 (Bankr. D. Mont. 1986); *accord McLain v. Newhouse*, 516 F.3d 301, 312 (5th Cir. 2008).  The Ninth Circuit Court of Appeals has explained that "[t]he term 'proceeds' includes all

15

funds 'traceable to' or 'substituted for' the original property." *In re Magnacom Wireless, L.L.C.*, 503 F.3d 984, 992 (9th Cir. 2007) (interpreting § 546(a)(6))).

For example, in *In re Jess*, 169 F.3d 1204 (9th Cir. 1999), the Ninth Circuit Court of Appeals, relying on § 541(a)(6), rejected a debtor's argument that a contingent fee that he received post-petition for pre-petition services was excludable from the bankruptcy estate. *In re Jess*, 169 F.3d at 1207. The court explained, "Payments for pre-petition services are not excludable from the estate solely because post-petition services are required to receive payment." *Id*. Consequently, the court held, "The estate is entitled to recover the portion of post-petition payments attributable to pre-petition services." *Id.* By analogy, "proceeds" of property of the bankruptcy estate would include payments received post-petition on a pre-petition claim, even though post-petition proceedings or actions on the claim are required to receive the payment. To put it another way, a post-petition payment on a pre-petition claim is "proceeds" of the claim pursuant to § 541(a)(6), because the post-petition payment is "traceable to" the original property, which was the pre-petition claim. *Cf. In re Magnacom Wireless, L.L.C.*, 503 F.3d at 992 (stating the "traceable to" standard for property under § 541(a)(6)).

### 3.    *"After-acquired property" under § 541(a)(7)*

Again, unlike § 541(a)(1), which is specifically limited to interests "*as of* the commencement of the [bankruptcy] case," § 541(7) pertains to "[a]ny interest in property that the estate acquires *after* the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1) and (7) (emphasis added). "'Congress enacted § 541(a)(7) to clarify its intention that § 541 be an all-embracing definition and to ensure that property interests created with or by property of the estate are themselves property of the estate.'" *In re Neidorf*, 534 B.R. at 371 (quoting *TMT Procurement Corp. v. Vantage Drilling Co. (In*

*re TMT Procurement Corp.*), 764 F.3d 512, 524–25 (5th Cir. 2014), and citing H.R. REP. 95–595, 549, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6455 & 6523–24).[6]

As pertinent, here,

> This section presupposes . . . that the estate has an interest in the property. This section does not expand the debtor's interest in the property merely because it was delivered postpetition. [T]his section is not intended to expand the property rights that a debtor would possess prepetition under § 541(a)(1). *See French v. Marion Gen. Hosp. (In re Patterson)*, 2008 WL 2276961 at *6 (Bankr.N.D. Ohio June 3, 2008) (stating that § 541(a)(7) does not provide an independent basis for the creation of estate property and "only operates when property is encompassed within the estate in the first instance").

*In re Pettit Oil Co.*, No. 13-47285, 2016 WL 4132473, *4 (Bankr. W.D. Wash. July 29, 2016). Thus, some "property" of the bankruptcy estate within the meaning of § 541(a)(1) must be used to acquire the "interest in property" post-petition for § 541(a)(7) to bring that after-acquired "interest" into the bankruptcy estate. The Bankruptcy Appellate Panel of the Ninth Circuit has explained when an after-acquired interest is property of the bankruptcy estate, as follows:

> [F]or the after-acquired interest to be considered property of the estate under § 541(a)(7), the interest (1) must be created with or by property of the estate; (2) acquired in the estate's normal course of business; or (3) otherwise be traceable to or arise out of any prepetition interest included in the bankruptcy

_____

[6] The classic example of an "interest in property that the estate acquires after the commencement of the case," within the meaning of § 541(a)(7), "'would be if the trustee entered into a contract after commencement of the case"; in such circumstances, "[t]he estate's interest in such a contract would . . . be property of the estate.'" *In re Carroll*, 900 F.2d 1266, 1270 (9th Cir. 1990) (quoting 4 COLLIER ON BANKRUPTCY ¶ 541.20, 541-105 (15th ed. 1990)).

> estate.  [*TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512,] 525 [(5th Cir.2014)].

*In re Neidorf*, 534 B.R. at 371-72.

### 4.    *Summary*

With these principles in mind, it becomes clear that a cause of action that only accrues post-petition is neither property of the bankruptcy estate under § 541(a)(1), nor property of the bankruptcy estate as "proceeds" of or from property of the bankruptcy estate under § 541(a)(6), nor property of the bankruptcy estate as an after-acquired "interest" under § 541(a)(7).  *Cf. In re Wisdom*, Case No. 11–01135–JDP, 2016 WL 872102, *2 n.4 (Bankr. D. Idaho March 7, 2016) ("A malpractice action that under applicable state law only accrues post-petition is neither property of the estate under § 541(a)(1) nor property of the estate under § 541(a)(7).").  On the other hand, a cause of action that accrued pre-petition is property of the bankruptcy estate under § 541(a)(1), and a post-petition recovery on that cause of action could be either "proceeds" of or from property of the bankruptcy estate under § 541(a)(6) or property of the bankruptcy estate as an after-acquired "interest" under § 541(a)(7).  *Cf. In re Brown*, 363 B.R. at 605 ("A later recovery on the claim is derivative of the cause of action and therefore also property of the estate.").

### C.    *Is The Payment Property Of The Bankruptcy Estate?*

The payment in question, undeniably, came into existence post-petition, so that it cannot be property of the bankruptcy estate *directly*, pursuant to § 541(a)(1).  *Cf. In re IndyMac Bancorp, Inc.*, 2012 WL 1037481 at *12 (observing that the filing of the bankruptcy petition determines a "date of cleavage" concerning what is property of the bankruptcy estate under § 541(a)(1)).  Thus, the questions on this appeal are, first,

whether the debtors had an accrued cause of action against Wells Fargo when they filed their petition in bankruptcy, which became property of the bankruptcy estate pursuant to § 541(a)(1), and, if so, whether the payment pursuant to the Consent Order—although it was post-petition—was "proceeds" of bankruptcy estate property or "acquired" by the bankruptcy estate, such that the payment is also property of the bankruptcy estate pursuant to § 541(a)(6) and/or § 541(a)(7), respectively. *Cf. In re Brown*, 363 B.R. at 605. I will consider these questions in turn.

### 1.    *Was there an accrued pre-petition cause of action?*

As the Ninth Circuit Court of Appeals has explained,

> To determine when a cause of action accrues, we look to state law. *In re Folks*, 211 B.R. 378, 384 (B.A.P. 9th Cir.1997). It is important, however, to distinguish principles of accrual from principles of discovery and tolling, which may cause the statute of limitations to begin to run after accrual has occurred for purposes of ownership in a bankruptcy proceeding. *In re Swift*, 129 F.3d 792, 796, 798 (5th Cir.1997).

*Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001); *In re Goldstein*, 526 B.R. at 21. Thus, the court looks at whether an action on the claim "could have been brought" pre-petition, even if the state statute of limitations on the claim had not yet begun to run. *Id.*; *In re Goldstein*, 526 B.R. at 21; *In re Hettick*, 413 B.R. 733, 768 (Bankr. D. Mont. 2009) ("Other courts have used *Cusano's* 'could have been brought' formulation in determining when a cause of action is property of the estate, obviously because if a claim 'could have been brought'—or here, has been brought—it has accrued." (citing cases)); *In re Brown*, 363 B.R. at 605 (also observing that "[o]ther courts have used *Cusano's* 'could have been brought' formulation").

In this case, the bankruptcy court found,

> Here, a cause of action for violation of the Idaho Consumer Protection Act would have accrued when the Debtors' loan

19

> was originated. *See* Idaho Code § 48-608(1) (providing that
> accrual occurs when a person purchases services and suffers
> an ascertainable loss that is the result of a practice declared
> unlawful by the ICPA12); *In re Beach*, 447 B.R. 313, 319
> (Bankr. D. Idaho 2011).
>
>      A cause of action for fraud, on the other hand, accrues
> when the facts constituting the fraud are discovered by the
> aggrieved party. Idaho Code § 5 218(4); *Mason v. Tucker &
> Associates*, 871 P.2d 846, 852 (Idaho Ct. App. 1994).

Memorandum Of Decision at 15-16. The bankruptcy court recognized that, using the "could have been brought" standard applicable to accrual for bankruptcy purposes, a fraud claim under Idaho law accrued when the last of nine elements, injury, occurred. *Id*. at 16. The bankruptcy court then concluded, "[S]ince even the last of those elements, injury, would have occurred in this case when Debtors began paying the higher rate of interest on the loan, their cause of action for fraud would have accrued prepetition as well." *Id.*

On appeal, the debtors do not really challenge these conclusions. Rather, they argue that there was no claim that was property of the bankruptcy estate under § 541(a)(1), because there is no evidence that there was any fraud or wrongdoing by Wells Fargo in directing them to their mortgage loan—and the Consent Order makes clear that Wells Fargo is not admitting any wrongdoing—nor is there direct evidence of any damage that they suffered as a result of conduct by Wells Fargo. I disagree with the debtors.

The Consent Order, itself, is evidence of fraud and wrongdoing by Wells Fargo in directing a class of borrowers, to which the debtors belong, to their mortgage loans. Even though Wells Fargo has not admitted, and may even dispute, any wrongdoing, and no damages have yet been proved, a cause of action had accrued at the time that the

debtors began paying the higher rate of interest on their loan.[7]  As pointed out, above, at pages 14-14, property of the bankruptcy estate includes *potential* causes of action that accrued pre-petition, even if the debtor is unaware of the claim.  *See, e.g., In re Michael*, 423 B.R. at 330.   The "cause of action need not be formally filed prior to the commencement of a bankruptcy case to become property of the estate," *Clift*, 2015 WL 4656151 at *1, so it necessarily need not be proved prior to the commencement of the bankruptcy case.  Indeed, it is clear that unliquidated and disputed causes of action that have accrued pre-petition are property of the bankruptcy estate.  *See, e.g., Ileto v. Glock, Inc.*, 565 F.3d 1126, 1148 n.1 (9th Cir. 2009) (causes of action that are property of the bankruptcy estate "includ[e] causes of action sounding in tort, such as personal injury, for which the ultimate amount of recovery is uncertain."); *In re Coastal Plains, Inc.*, 179 F.3d 197, 208–09 (5th Cir. 1999) ("It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims."); *In re Pace*, 132 B.R. 644, 646 (Bankr. D. Alaska 1991) ("[A] debtor's claim for personal injuries is included as property of the estate whether the claim is unliquidated at the time of the filing of a bankruptcy petition or is settled thereafter."); 11 U.S.C. § 101(5) (defining "claim," within the meaning of the Bankruptcy Code, and without limitation to claims of creditors or debtors, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").

---

[7] The existence of the Consent Order applicable to debtors, as members of the class entitled to relief, provides sufficient facts to make plausible the debtors' claim to relief for the alleged wrongdoing by Wells Fargo described in the Consent Order and, thus, to state a claim upon which relief can be granted under the "*Twom-bal* standard." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The bankruptcy court correctly concluded that the debtors had a cause of action against Wells Fargo that accrued pre-petition and, consequently, became property of the bankruptcy estate pursuant to § 541(a)(1).

### 2. Was the payment "proceeds" of the pre-petition cause of action?

The fact that the debtors had a cause of action against Wells Fargo that was property of the bankruptcy estate does not mean that the post-petition payment was also *necessarily* property of the bankruptcy estate. On the other hand, the post-petition payment is property of the bankruptcy estate if it is "proceeds" of the pre-petition cause of action within the meaning of § 541(a)(6). As explained, above, in the Ninth Circuit, the test of whether funds are "proceeds" of property of the bankruptcy estate is whether the funds are "traceable to" or "substituted for" the "original property," that is, the pre-petition cause of action. *In re Magnacom Wireless, L.L.C.*, 503 F.3d at 992.

The payment at issue, here, is "traceable to" the pre-petition cause of action, *id.*, pursuant to both the terms of the Consent Order and the release. Specifically, the Consent Order identified the alleged wrongdoing by Wells Fargo and identified a class of borrowers, to which the debtors belong, entitled to relief, Consent Order at 10-23, *and* the Consent Order authorized Wells Fargo to obtain "an appropriate form of release not to be executed earlier than notification of the borrower of the amount of remedial compensation offered" as a document that a borrower "must provide in order to obtain such remedial compensation." *Id.* at 21. Indeed, the release language in the Consent Order demonstrates that the debtors are simply wrong when they contend that "there is no evidence the funds would not be received if the release was not signed," Appellants' Brief at 7, ¶ 34. Similarly, the debtors are wrong when they contend that they were not required to take any affirmative action to obtain relief under the Consent Order, because they (or the Trustee on their behalf) had to execute the release to obtain that remedial relief. To put it another way, property of the bankruptcy estate includes payments

22

received post-petition on a pre-petition claim, even though, as here, post-petition proceedings, actions, or settlement on the claim were required to receive the payment, because such post-petition payment is "proceeds" of the pre-petition claim. *Cf. In re Jess*, 169 F.3d at 1207.

The bankruptcy court did not err in concluding that the payment at issue is "proceeds" of a pre-petition cause of action and, consequently, property of the bankruptcy estate within the meaning of § 541(a)(6).

### 3.   Was the payment "after-acquired property" of the bankruptcy estate?

I also conclude that the bankruptcy court did not err in concluding that the payment at issue is "[an] interest in property that the estate acquire[d] *after* the commencement of the [bankruptcy] case," within the meaning of § 541(a)(7).  This is so under all three prongs of the test in the Ninth Circuit.

First, the interest in the payment was created by the pre-petition cause of action that was property of the bankruptcy estate, again as demonstrated by the terms of the Consent Order and the release it authorized.  *In re Neidorf*, 534 B.R. at 371-72 (citing *In re TMT Procurement Corp.*, 764 F.3d at 525.  The payment was acquired in the normal course of the bankruptcy estate's business, *id.*, as the Trustee had sole authority to settle a cause of action that belonged to the bankruptcy estate, *see, e.g., Estate of Spirtos v. Superior Court*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate."); *Canatella v. Towers (In re Alcala)*, 918 F.2d 99, 102 (9th Cir. 1990) (causes of action that accrued before the Chapter 7 petition was filed are part of the bankruptcy estate vested in the trustee); *In re Nuttery Farm, Inc.*, 467 F. App'x 711, 712 (9th Cir. 2012) ("The Bankruptcy Code allows the trustee [to seek authorization] to sell or settle a cause of action.").  Finally, for the reasons explained, above, the payment is "otherwise traceable

23

to or ar[o]se out of [a] prepetition interest included in the bankruptcy estate," that is, the pre-petition cause of action against Wells Fargo. *In re Neidorf*, 534 B.R. at 372.

### 4.    Summary

Because the debtors had a cause of action against Wells Fargo for the wrongdoing at issue that accrued pre-petition, which was property of the bankruptcy estate under § 541(a)(1), and because a post-petition recovery on that cause of action was obtained by settlement, in the form of the Consent Order and release, the payment pursuant to that settlement was either or both "proceeds" of or from property of the bankruptcy estate under § 541(a)(6) and/or property of the bankruptcy estate as an after-acquired "interest" under § 541(a)(7). *Cf. In re Brown*, 363 B.R. at 605 ("A later recovery on the claim is derivative of the cause of action and therefore also property of the estate.").

### D.    The Debtors' Contrary Authority

The debtors contend that the case law dictates a different conclusion.  As the bankruptcy court observed, the applicable case law requires a "close reading." Thus, I demonstrate why a "close reading" demonstrates the problems with the debtors' contentions.

### 1.    In re Neidorf

The debtors contend that the foregoing analysis is the wrong one, because they read *In re Neidorf*, 534 B.R. 369 (B.A.P. 9th Cir. 2015), to hold that a monetary award pursuant to a Consent Order entered into after the bankruptcy petition is not part of the bankruptcy estate, because the "qualifying event"—the one that created the rights and remedies for the specified class of borrowers—was the Consent Order, not the liability for some misdeed that may have occurred prior to bankruptcy.  I agree with the bankruptcy court that the debtors read *In re Neidorf* as standing for far too broad a proposition.

In *In re Neidorf*, the debtor filed her Chapter 7 petition on July 12, 2008; the mortgage lender obtained relief from the stay on September 29, 2008, to pursue remedies on the mortgage on the debtor's residence; the debtor was discharged in bankruptcy on October 21, 2008; and the residence was sold at a foreclosure sale on July 14, 2009. *Id.* at 370. Much later, the debtor disclosed that she had received a Foreclosure Payment on April 15, 2014, pursuant to a 2011 consent order between the Comptroller of the Currency and the lender, which had been amended in 2013. *Id.* at 370, 372. The decision is silent as to whether any release of claims was necessary to obtain the Foreclosure Payment. The court held that "it was the postpetition 2011 Consent Order and the 2013 [Amendment of the Consent Order] which created the rights and remedies for the specified class of borrowers," including the debtor, and that "[n]owhere has the Trustee shown how the estate obtained an interest in the Foreclosure Payment itself when the qualifying events giving rise to Debtor's legal rights to the payment all occurred postpetition and were held solely by the borrowers." *Id.* (also stating, "The fact that Debtor's Residence became property of the estate, in and of itself, does not support the inclusion of the Foreclosure Payment as after-acquired property under § 541(a) (7). Rather, Debtor became entitled to the payment only as a result of qualifying events occurring after her bankruptcy filing.").

I cannot read *In re Neidorf* to stand for the proposition that any payment pursuant to a post-petition consent order is created by the consent order and property of the debtor. Rather, the court in that case reached the conclusion that the specific Foreclosure Payment at issue was created by the post-petition consent order at issue and was property of the debtor *in light of the facts presented*. *In re Neidorf* is distinguishable on its facts, however.

Most obviously, any cause of action that the debtor in *In re Neidorf* had against the lender, as a result of wrongdoing by the lender during the post-petition foreclosure,

was a cause of action that only accrued *post-petition*.  While the court in *In re Neidorf* distinguished between the residence, as property of the bankruptcy estate, and the cause of action arising from the post-petition foreclosure of that property, as property of the debtor, the debtor's cause of action was *post-petition*, based on post-petition wrongdoing by the lender.  Therefore, in that case, the post-petition cause of action could not be property of the bankruptcy estate pursuant to § 541(a)(1), because it was not held by the debtor "as of the commencement of the case."  The debtors are correct that, in *In re Neidorf*, there is no reference to any "cause of action" or "claim" that the debtor might have had against the lender as relevant to the analysis.  Rather, the discussion concerned a consent order related to a *post-petition* foreclosure action, because it provided for distributions to "borrowers who had a pending or completed foreclosure on their primary residence any time from January 1, 2009, to December 31, 2010," *id.* at 372, but the debtor had been discharged in bankruptcy on October 21, 2008.  Where there was no pre-petition property or pre-petition cause of action pursuant to § 541(a)1), there could be no post-petition property "acquired" with bankruptcy estate property pursuant to § 541(a)(7).  *See In re Pettit Oil Co.*, 2016 WL 4132473 at *4 (explaining that the bankruptcy estate must have an interest pursuant to § 541(a)(1) to "acquire" an interest pursuant to § 541(a)(7)).  The debtors are also correct that, in *In re Neidorf*, there is no reference to a release of any claim against the lender as a condition of receiving the Foreclosure Payment.  Where there was no pre-petition action on which to base a cause of action and no release of any pre-petition action as a condition of payment, it is not surprising that the trustee could not show how the bankruptcy estate had ever acquired an interest in the post-petition Foreclosure Payment.  *Id.* at 371-72.

Here, however, the debtors' cause of action against the lender accrued pre-petition, so that the debtors' cause of action was property of the bankruptcy estate pursuant to § 541(a)(1).  Also, here, the Consent Order expressly authorized a release as

a requirement for the borrower to obtain relief.  The connection between the pre-petition cause of action (as property of the bankruptcy estate) and the post-petition payment pursuant to the Consent Order—which was missing in *In re Neidorf*—is made, here, such that the post-petition payment is property of the bankruptcy estate pursuant to §§ 541(a)(6) or 541(a)(7).

*In re Neidorf* does not require a different result here.

### 2.     In re Vanwart

Nor does *In re Vanwart*, 497 B.R. 207 (Bankr. E.D.N.C. 2013), on which the debtors also rely, require a different result.  The circumstances in *In re Vanwart* differ from those in *In re Neidorf* in that a *pre-petition* foreclosure action qualified the debtors for a post-petition payment of $25,000 pursuant to a consent order between their mortgage servicer and the Federal Reserve.  497 B.R. at 208-09.  The circumstances differ from both the circumstances in *In re Neidorf* and the circumstances in this case in that the consent order did expressly provide that borrowers would not be required to execute a waiver of any legal claims they might have against their mortgage servicer as a condition for receiving the payment, that the payment did not reflect specific financial injury or harm that may have been suffered by the borrowers, and that, in fact, the borrowers could still pursue additional actions related to the underlying foreclosure.  *Id.* at 209-11.  The foreclosure action that qualified the debtors for the payment pursuant to the consent order had been voluntarily dismissed, and only a later foreclosure was completed.  *Id.* at 208-09.  Indeed, the court found "no indication that the debtors were wrongfully foreclosed upon or ha[d] some other cause of action against" the mortgage servicer, *id.* at 212, and suggested that the payment "could be referred to as a 'windfall,'" *id.* at 213 n.6.  As the court explained,

> Ultimately, the [mortgage servicer] entities, possibly for their own convenience, decided to forego the Independent Foreclosure Review [required by an earlier consent order]

27

> that would have identified specific deficient foreclosure
> actions, and opted instead to make blanket payments to the
> entire [group of borrowers in the specified time frame.]
> Therefore, the $25,000 payment was not related to a cause of
> action held by the debtors at the time of the commencement
> of the bankruptcy case.

*In re Vanwart*, 497 B.R. 212.  Under these circumstances, and specifically where there was no "cause of action" belonging to the debtor related to the post-petition payment, the court in *In re Vanwart* concluded that the post-petition payment was not "sufficiently rooted in the prepetition past" to be property of the bankruptcy estate.   *Id*. at 212-13 (finding that this test had been established by *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)).  Rather, the court concluded, "The payment stemmed from the 2013 consent order; however, even at the time that the 2013 consent order was entered, there is no indication that the debtors were entitled, legally or equitably, to the payment." *Id*. at 213.

Here, the event that qualified the debtors for relief under the Consent Order was pre-petition, as in *In re Vanwart*—origination of their loan during the specified timeframe, like foreclosure proceedings during the specified timeframe in *In re Vanwart*.  There, however, the similarities end.  Where the payment in *In re Vanwart* was a "blanket" one, to all borrowers within the timeframe, without any indication of pre-petition wrongful conduct by the lender, without any requirement that the borrower waive any claim to receive the payment, and with a specific preservation of the borrower's right to sue for wrongdoing in relation to the foreclosure notwithstanding the payment, the payment was not "sufficiently rooted in the prepetition past" to be property of the bankruptcy estate. Here, in contrast, the Consent Order identified the wrongful conduct to which the borrowers had potentially been subjected and authorized a release as a requirement for the borrowers to obtain the relief provided.  Thus, here, there is every "indication that

28

the debtors . . . ha[d] some . . . cause of action against" Wells Fargo as of the commencement of their bankruptcy case, *id.* at 212 (finding this element was missing), so that the cause of action, here, was property of the bankruptcy estate, and the settlement and release of that cause of action pursuant to the Consent Order was "sufficiently rooted in the prepetition past" to be property of the bankruptcy estate under the *Segal* test, for the same reasons it was "proceeds" within the meaning of § 541(a)(6) and/or "after-acquired property" within the meaning of § 541(a)(7).

Thus, *In re Vanwart* also does not require a different result here.[8]

### 3.     The cases involving relief by governmental action

The debtors also cite several cases that they contend support their contention that, where post-petition governmental action creates rights to payment or property, such as

---

[8] The debtors also rely on *Hoseman v. Weinschneider*, 277 B.R. 894 (N.D. Ill. 2002), which they contend holds that, even though contractual terms were being negotiated and other significant efforts were undertaken pre-petition, the contract was not finalized until after the bankruptcy filing, so the action related to the contract was not property of the estate. Apparently, they suggest that there was no interest of the debtors, here, in the payment at issue until the Consent Order was finalized. In *Hoseman*, the court concluded that the action on the contract was not "sufficiently rooted" in the pre-petition past, under *Segal*, to be property of the estate. The court reasoned that, to satisfy the *Segal* test in a contract case, "there must have been a contract, something that could have been enforced and assigned or otherwise alienated or levied against." *Hoseman*, 277 B.R. at 900. Because there was no contract pre-petition, the court concluded that there was no prospect of any interest in a breach-of-contract claim pre-petition that would have "rolled into the bankruptcy estate," and the contract was not for pre-petition services. *Id.* at 901. In the debtors' case, however, there was a cause of action that could have been pursued prior to the filing of the debtors' petition in bankruptcy. While there is a cause of action for breach of contract only after a contract has been finalized, a tort cause of action accrues, for purposes of bankruptcy, when the claim "could have been brought," that is, when the wrongful conduct and injury have occurred. *Cusano v. Klein*, 264 F.3d 936 (9th Cir. 2001). Again, the debtors' claims against Wells Fargo accrued pre-petition.

the Federal Reserve's action here, culminating in the Consent Order, the resulting property is not property of the bankruptcy estate. I do not agree that these cases require a different result from the one I reached, above.

In none of the case cited by the debtors was there a readily discernable legal interest *at the time of the bankruptcy filing*, pursuant to which the property at issue was subsequently obtained, which would have made the post-petition property bankruptcy estate property. *See Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234 (11th Cir. 2008) (holding that post-petition crop disaster payments authorized by post-petition legislation for pre-petition crop losses were not property of the bankruptcy estate, because the debtor had no legal or equitable interest in a payment until passage of the legislation, only "a hope and maybe an expectation that legislation w[ould] be enacted for his relief," but that was not enough); *In re Vote*, 276 F.3d 1024 (8th Cir. 2002) (rejecting the trustee's argument that post-petition crop loss payments for a pre-petition crop failure, pursuant to post-petition federal crop disaster legislation, were property of the bankruptcy estate, because the debtor had no existing interest at the time of filing sufficient to "root" the payments in the pre-petition past under *Segal*; rather, the debtor "had a mere hope that his losses might generate revenue in the future"); *In re Schmitz*, 270 F.3d 1254 (9th Cir. 2001) (rejecting the trustee's argument that post-petition fishing quota rights, based on the debtor's pre-petition catch history, pursuant to post-petition final regulations of the Secretary of Commerce, were property of the bankruptcy estate, because the regulations did not exist at the time the debtor filed his petition and, although the quota rights were calculated on the basis of the debtor's pre-filing fishing history, they governed only his post-filing right to fish; the debtor "might have had a hope, a wish and a prayer that the Secretary would eventually implement the plan then under consideration, [but] the fact remains that as of the date of the petition, [the debtor's] 1988-1990 catch history had no value"). Because there was a pre-petition cause of action, here, and the payment

pursuant to the Consent Order was "proceeds" of that cause of action or "acquired" by the bankruptcy estate because of and only upon release of that pre-petition cause of action, the post-petition payment was property of the bankruptcy estate pursuant to § 541(a)(6) and/or § 541(a)(7) and "sufficiently rooted in the pre-petition past" to be property of the bankruptcy estate under *Segal*.

## IV.   CONCLUSION

Upon the foregoing, the March 10, 2016, Memorandum Of Decision (Bankr. docket no. 68), and the March 17, 2016, Order (Bankr. docket no. 69) holding that the payment at issue is property of the bankruptcy estate are **affirmed.**

**IT IS SO ORDERED**.

**DATED** this 1st day of September, 2016.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA
VISITING JUDGE